Revised 03/06 WDNY

FILED
UNITED STATES DISTRICT COURT
JUN 2 2022
MARY C. LOEWENGUTH, CLERK
WESTERN DIST. OF NY

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

22 CV 418 √

### FORM TO BE USED IN FILING A CIVIL COMPLAINT IN FEDERAL COURT
**(Non-Prisoner Context)**

All material filed in this Court is now available via the **INTERNET**. See **Pro Se Privacy Notice** for further information.

## 1. CAPTION OF ACTION

**A.** **Full Name of Plaintiff: NOTE:** *If more than one plaintiff files this action and seeks in forma pauperis status, **each** plaintiff must submit an in forma pauperis application or the only plaintiff to be considered will be the plaintiff who filed an application.*

Jerry W. Moore

–vs–

**B.** **Full Name(s) of Defendant(s) NOTE:** *Pursuant to Fed.R.Civ.P. 10(a), the names of all parties must appear in the caption. The court may not consider a claim against anyone not identified in this section as a defendant.* Add a separate sheet, if necessary.

1. Janet DiFiore, Chief Judge, N.Y.S. Ct. of App.
2. Letitia James, N.Y. State Attorney General
3. Valerie Vander Wal, (Secretary, N.Y.S. Worker's Comp. Board)
4. Daniel Scott, Judge, NY Workers' Compensation Board
5. Thomas Glynn, Esq., (Liberty Mutual Insurance,Inc.,)
6.

## 2. STATEMENT OF JURISDICTION, VENUE and NATURE OF SUIT
*All of these sections **MUST** be answered*

*Identify the basis for federal Court jurisdiction over your claim, such as that the United States government is a party to the action, all the parties reside in different states and therefore you claim diversity jurisdiction, or the claim presents a federal question or arises under federal law.*

A. Basis of Jurisdiction in Federal Court: 28 U.S.C. § 1331; Title 42 U.S.C., Section 1982; 24 C.F.R. 6.4, Section 109; Title 42 U.S.C., 2000b;

*State why the Western District of New York is the proper venue for this action, such as that your claim arises in or the defendant resides in the 17 westernmost counties of New York State.*

B. Reason for Venue in the Western District: 28 U.S.C. § 1391 (b) and (c) because all the claims alleged in this action arose in the Western District of New York, and concern or otherwise relate to federal property located in this District.

*Identify the nature of this action, such as that it is a civil rights claim, a personal injury or personal property (tort) claim, a property rights claim, or whatever it is.*

C. Nature of Suit: This is a Civil Rights claim for deprivation of rights secured by the U.S. Constitution.

## 3. PARTIES TO THIS ACTION

**PLAINTIFF'S INFORMATION  NOTE:** *To list additional plaintiffs, use this format on another sheet of paper.*

Name of First Plaintiff: Jerry W. Moore

Present Address: 865 Michigan Avenue, Apt. 313

Buffalo, New York 14203-1248.     (716) 322-0019

Name of Second Plaintiff:

Present Address:

**DEFENDANT'S INFORMATION  NOTE:** *To list additional defendants, use this format on another sheet of paper.*

Name of First Defendant: Janet DiFiore,

Official Position of Defendant (if relevant): Chief Judge, N.Y.S. Court of Appeals

Address of Defendant: 20 Eagle Street,

Albany, New York 12207.     Phone:  (518) 455-7700

Name of Second Defendant: Letitia James,

Official Position of Defendant (if relevant): N.Y. State Attorney General

Address of Defendant: Public Integrity Bureau28 Liberty Street, 15th Floor,

New York, NY 10005.        Phone:  (212) 416-8090

Name of Third Defendant: Valerie J. Vander Wal, Esq.,

Official Position of Defendant (if relevant): Secretary, N.Y.S. Worker's Compensation Board

Address of Defendant: 328 State Street, Schenectady, N.Y. 12305 -3201.

Phone:  (877) 632-4996

## 4. PREVIOUS LAWSUITS IN STATE AND FEDERAL COURT

**A.**     Have you begun any other lawsuits in **state or federal court** dealing with **the same facts involved in this action**?

Yes ☐     No ☑

If Yes, complete the next section.  NOTE: *If you have brought more than one lawsuit dealing with the same facts as this action, use this format to describe the other action(s) on another sheet of paper.*

1.     Name(s) of the parties to this other lawsuit:

Plaintiff(s): None.

Defendant(s): _____

_____

2.    Court (if federal court, name the district; if state court, name the county): _____

_____

3.    Docket or Index Number: _____

4.    Name of Judge to whom case was assigned: _____

5.    The approximate date the action was filed: _____

6.    What was the disposition of the case?

      Is it still pending?  Yes [ ]  No [ ]

          If not, give the approximate date it was resolved. _____

      Disposition (check those statements which apply):

      [ ] Dismissed (check the statement which indicates why it was dismissed):

          [ ] By court *sua sponte* as frivolous, malicious or for failing to state a claim upon which relief can be granted;

          [ ] By court for failure to prosecute, pay filing fee or otherwise respond to a court order;

          [ ] By court due to your voluntary withdrawal of claim;

      [ ] Judgment upon motion or after trial entered for

          [ ] plaintiff

          [ ] defendant.

## 5.  STATEMENT OF CLAIM

**Please note** that it is not enough to just list the ground(s) for your action. You **must** include a statement of the facts which you believe support each of your claims. In other words, just tell the story of what happened and do not use legal jargon.

**Fed.R.Civ.P. 8(a)** states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "The function of pleadings under the Federal Rules is to give fair notice of the claim asserted. Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial." Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995).

**Fed.R.Civ.P. 10(b)** states that "[a]ll averments of claim ... shall be made in numbered paragraphs, the contents of each of which shall be limited as far a practicable to a single set of circumstances."

**A.  FIRST CLAIM:** On (*date of the incident*) May 24, 2022 _____ ,

defendant (*give the **name and (if relevant) the position held** of **each defendant** involved in this incident*) _____

Janet DiFiore, Chief Judge, N.Y.S. Ct. of Appeals _____

_____

did the following to me (*briefly state what each defendant named above did*): Access to Courts in New York State is no more than a "static" formality because the State creating and perpetuating policies that allow such racial disparities to exist in its New York State Criminal Justice System and government and have a disparate impact

The federal basis for this claim is: Slavery has never legally ended in the U.S.A. but moved into theU.S. Prison System under the 13th Amendment in 1865, oppression continues.

State briefly **exactly** what you want the Court to do for you. *Make no legal arguments and cite no cases or statutes*: I want the Court to Order Defendants to award Plaintiff Workers' Compensation Benefits, back pay and loss wages for traumatic spinal cord injury he suffered at work.

**B. SECOND CLAIM:** On (*date of the incident*) May 24, 2022 ,
defendant (*give the name and (if relevant) position held of each defendant involved in this incident*) New York Court of Appeals, Chief Judge, Janet DiFiore

did the following to me (*briefly state what each defendant named above did*): 
The New York Court of Appeals DISMISSED Plaintiff's Claim and stated: Under CPLR 5601 ("no appeal as of right" based on the Decision of the Appellate Division") based upon discrimination and a disparate impact.

The federal basis for this claim is: 42 U.S.C 1982 and Title III of the Civil Rights Act of 1964 42 USC 2000b.

State briefly **exactly** what you want the Court to do for you. *Make no legal arguments and cite no cases or statutes*: Award plaintiff workers' compensation benefits due to the discriminatory interpretation and application and enforcement of the laws of the State of New York and a violation of the 14th Amendment.

**If you have additional claims, use the above format to set them out on additional sheets of paper.**

## 6. SUMMARY OF RELIEF SOUGHT

*Summarize the relief requested by you in each statement of claim above.*

Declares that the policies and practices of Defendants violate Title 42 USC 1982 and CFR 35.10(g) and ADA of 1990.

Enjoin the Defendants from failing to rule on the merits of his Interlocutory Order.

Award monetary damages

Assess civil penalty against defendants.

Do you want a **jury trial**? Yes ✔  No ☐

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on   June 2, 2022
                    (date)

**NOTE:** *Each plaintiff must sign this complaint and must also sign all subsequent papers filed with the Court.*

*Jerry W. Moore, pro se*

Signature(s) of Plaintiff(s)

From the desk of
Jerry W. Moore
865 Michigan Avenue
Apt. 313
Buffalo, N.Y. 14203-1248
(716) 322-0019

June 2, 2022.

To:    Clerk, U. S. District Court
United States Courthouse
# 2 Niagara Square
Buffalo, New York 14202

In re:  Moore v. Merrick B. Garland, U.S. Atty. Gen.
Docket No. _____, LJV

Dear Clerk of the Court:

Enclosed *herewith* please find the Original Complaint and one extra copy to be filed on behalf of Plaintiff Jerry W. Moore, in the above-captioned matter. Thank you.

Truly, *Jerry W. Moore*
Jerry W. Moore

By:   JERRY W. MOORE
        Plaintiff, *pro se*
865 Michigan Avenue, Apt. 313
Buffalo, New York 14203-1248
(716) 322-0019 (home)
(716) 310-8796 (mobile)
E-mail: moorejerry308@gmail.com


UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JERRY W. MOORE,
                Plaintiff,
        -vs-

MERRICK B. GARLAND, ATTY. GENERAL,
THE UNITED STATES OF AMERICA,
                Defendant,
        and,
JANET DIFIORE, CHIEF JUDGE,
N.Y.S. COURT OF APPEALS,
STATE OF NEW YORK,
                Defendant,
        and,
LETITIA JAMES, NY ATTORNEY GENERAL,
STATE OF NEW YORK,
                Defendant,
        and,
VALERIE VANDER WAL, Esq.
OFFICE OF THE SECRETARY, N.Y.S.
WORKERS' COMPENSATION BOARD,
                Defendant,
        and,
DANIEL SCOTT- (Law Judge)
NYS WORKERS' COMPENSATION BOARD,
                Defendant,
        and,
THOMAS GLYNN, Esq.,
LIBERTY MUTUAL INSURANCE, Inc
                Defendant.

**CIVIL COMPLAINT
WITH A JURY DEMAND**

Civil No. _____-LJV

**Violations:** 1st Amendment to the
United States Constitution.
"Access to Courts".

**Violations:** 5th Amendment to the
United States Constitution.
"Substantive Due Process of Law".

**Violations:** 6th Amendment to the
United States Constitution.

**Violations:** 14th Amendment to the
United States Constitution.

**Violations:** Title II of the Americans
with Disabilities Act of 1990.

**Violations:** Title III of the Americans
with Disabilities Act of 1990.

**Violations:** Title: Title III of the
Americans with Disabilities Act of
1991.

**Violations:** Title 42 USC, Chap. 126
Section §12112(b)(5)(A) Discrimination

**Violations:** 28 C.F.R. Part § 35

**Violations:** Title II and Title III of the
Civil Rights Act of 1964. 42 USC
§2000b

**Violations:** Title 42 USC 1982

**Violations:** Title 42 U.S.C. §2000a
Public Accommodations.

**Violations:** Art. I, Section (6) and,
Section (11) of the New York
Constitution.

1

Preliminary Statement

Complainant Jerry W. Moore, acting, *pro se*, herein files this civil complaint under **Title 42 U.S.C., 1982** and under **Title III of the Civil Rights Act of 1964, 42 U.S.C. 2000b** for State sponsored acts of racial discrimination and a disparate impact by State employees, under the **"Critical Race Theory".**

Statement of Facts

1.    In an effort to maintain white hegemonic control of the government due to fear of the "Browning of America" by 2050, the State of New York "White Supremacists", joined by other white Collaborators and Sympathizers, engaged in a violent campaign of deadly police traffic stops; arrests, and "wrongful" conviction and imprisonment of innocent men and women for the crime they are not guilty.

2.    Access to Courts and "accessibility" to "justice" in New York State and the United States of America is no more than a "static" formality because African Descendants of Slaves (ADOS) DO NOT receive access to **"Justice"**, as a result of the State creating and perpetuating policies that allow such racial disparities to exist in its New York Criminal Justice System and elsewhere, the State of New York and the United States of America is in violation of its obligations under Article 2 and Article 26 of the International Covenant on Civil and Political Rights

to ensure that all its residents—regardless of race—are treated equally under the law.

3.     This action is brought by Jerry W. Moore, the Plaintiff, a 63-years of age African Descendant of Slaves (ADOS), a Federal Citizen born in the Federal District of Columbia, a resident of the State of New York, County of Erie, City of Buffalo.

3.     Plaintiff was hired by U.S. Xpress Enterprise Inc., in September 2015 as a professional over-the-road truck driver with a "CLASS-A" driver's license from the State of New York. In October 2015, the Plaintiff suffered a traumatic spinal cord injury as a result of "repetitive stress of heavy lifting syndrome" and lifting a heavy box from overhead containing four gallons of bleach when, suddenly, the plaintiff experienced a sharp pain in his upper back that caused an abscess to form of the spinal cord.

6.     On February 12, 2016, the Veterans Medical Center made an Emergency Transport of the plaintiff to the Buffalo General Emergency Room Hospital for emergency surgery for a "spinal cord laminectomy" procedure.

7.     Plaintiff is now 100% and totally disabled and confined to a wheelchair for mobility purposes.

8.     The action was commenced on 09/26/2019 at 11:00 A.M., at the Buffalo, New York Workers' Compensation Board.

3

9.      The nature and object of the action are as follows:

10.     On, February 3, 2016, Plaintiff Filed Employee Claim (Form C-3) with the
Workers' Compensation Board for benefits following a traumatic spinal cord
injury resulting from a work-related accident that left him totally and 100%
permanently disabled and confined to a wheelchair. Claim No. 532233.

11.     On 07/20/2016, the Plaintiff Filed Employee Claim (Form C-3) with the
Workers' Compensation Board for benefits following a traumatic spinal cord
injury resulting from a work-related accident that left him totally and permanently
disabled and confined to a wheelchair.

12.     On 10/03/2019, the Plaintiff Filed Employee Claim (Form C-3) with the
Workers' Compensation Board for benefits following a traumatic spinal cord
injury resulting from a work-related accident that left him totally and 100%
permanently disabled and confined to a wheelchair.

13.     The Workers' Compensation Law Judge (WCLJ) rendered an Interlocutory
Decision, dated, 10/17/2019, NY CPLR §5702 (2016), (Finding sufficient Prima
Facie Medicine Evidence of plaintiff's spinal cord injuries are work related). See,
(Workers' Compensation Law § 25 [2-a] [a]; see 12 NYCRR 300.1 [a] [9] and, (12
NYCRR 300.38 [g] [3] [i]).

14.     Thomas Glynn, Esq., represented the Carrier, Liberty Mutual Insurance,
Inc., failed to provide a "factual basis" for controverting the claim.

4

15.     In a "Letter to the Court and Plaintiff, the New York State Attorney General's Office indicated that the Attorney General's Office "refuses" to file a reply brief in the matter on appeal to the New York Supreme State Court.

16.     The Decision of the Workers' Compensation Law Judge dated, 04/06/2020 and the Panel Board Decision dated, August 17, 2020, and, the Full Board Decision dated, October 7, 2020, Disallowing His claim (claim no. G105-8871) denied the plaintiff justice to have his issue(s) heard and ruled upon on their merits on appeal, as of right, has a disparate impact.

17.     The New York Court of Appeals dismissed, on its own motion, the plaintiff's workers' compensation claim on appeal, Mo. No. 2022-115 dated, May 24, 2022. App. No. 2022-7 (Pin No. 86317). In the Plaintiff's Claim No. G-105-8871 denied the plaintiff justice to have his issue(s) heard and ruled upon on their merits on appeal, as of right, has a disparate impact.

18.     The NY Court of Appeals' decision to dismiss the claim stated that under CPLR  5601"no appeal lies as of right" from a unanimous decision of the Appellate Division".

19.     The Plaintiff states that under "CPLR 5701(a)(1) -**Appeals as of Right**-- Appeals from any final or interlocutory judgment except one entered subsequent to an order of the appellate division which disposes of all the issues in the action".

20.    Plaintiff states that "there exists a conflict between New York CPLR 5601 and CPLR 5701(a)(1) causes the plaintiff to be denied "accommodations" for "accessibility" to justice to have his issue ruled upon based on the merits of the Interlocutory Order and the prima facie medical evidence being appealed due to the plaintiff being a descendant of slaves in this country devoid of all legal rights.

21.    The United States of America Constitution's discriminatory and prejudicial language has a **disparate impact** on the Plaintiff- a member of ADOS- and other African Descendants of Slaves because, under the 13th Amendment, the enslaved were never "legally" emancipated, but that, "slavery" was moved to the prison system upon conviction of a crime and imprisoned. Now. Slavery, as a condition of confinement, becomes constitutionally the "law of the land" therefore, "no access to equal justice" is possible.

22.    Any law without justice is not a law at all it is an act of violence that is not to be obeyed. Access to court with no accommodations for access to justice being provided to (ADOS) by the New York and the U.S. Criminal Justice Systems is an act of violence by the U.S.A. and the State of New York *via* the United States of America Constitution's discriminatory and prejudicial language contained therein.

### Jurisdiction

23.    This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 1345 and 42 U.S.C. § 3614(a).

## Venue

24.    Venue is proper pursuant to 28 U.S.C. § 1391 (b) and (c) because the claims alleged in this action arose in the Western District of New York, and concern or otherwise relate to federal property located in this District.

## Defendant # 1- Janet Difiore.

25.    The Chief Judge of the Court of Appeals, in addition to presiding over that court, also **serves as the chief administrative judge for all of New York State**. This court articulates state-wide principles of law in the context of deciding lawsuits. The New York State Court of Appeals is the highest court in the Judiciary System of the State of New York.

26.    The Court of Appeals consists of seven judges: the Chief Judge and six Associate Judges who are appointed by the Governor and confirmed by the State Senate to 14-year terms.

## Defendant # 2 - Letitia James.

27.    New York State Attorney General, Letitia James, is head of the Department of Law, the Attorney General and is both the "People's Lawyer" and the State's chief legal officer. As the "People's Lawyer," the Attorney General serves as the guardian of the legal rights of the citizens of New York, its organizations, and its natural resources. In fulfilling the duties of the State's chief legal counsel, the Attorney General not only advises the Executive branch of State government but also defends actions and proceedings on behalf of the State.

28.    The Attorney General serves all New Yorkers in numerous matters affecting their daily lives. The Attorney General's Office is charged with the statutory and common law powers to protect consumers and investors, charitable donors, the public health and environment, civil rights, and the rights of wage-earners and businesses across the State.

### Defendant # 3 - Valerie Vander Wal, Esq.

29.    Valerie Vander Wal, Esq., is the Secretary of the New York State Workers' Compensation Board. The Secretary's duties include, but are not limited to, the Secretary is to equitably and fairly administer the provisions of the New York State Workers' Compensation Law, including Workers' Compensation Benefits, Disability Benefits, Volunteer Firefighters' Benefits, Volunteer Ambulance Workers' Benefits & Volunteer Civil Defense Workers' Benefits Law on behalf of our customers, New York's injured workers and their employers.

### Defendant # 4 - Daniel Scott.

30.    Daniel Scott, (Administrative Law Judge) is the New York State Workers' Compensation Law Judge (WCLJ) – Buffalo Office and presided over the hearings and proceedings in this workers' compensation claim for benefits. The adjudicatory duties of a law judge take precedence over all his or her other activities. A Law Judge Shall Perform the Duties of His or Her Office Impartially and Diligently.

31.    A law judge shall not have any interest, financial or otherwise, direct or

indirect, or engage in any business or transaction or professional activity or incur

any obligation of any nature, which is in substantial conflict with the proper

discharge of his duties in the public interest.

32.    A law judge's actions and affiliations must be above reproach, even if no

actual conflict of interest is present. Any associations that give rise to the suspicion

or perception of favoritism, self-dealing or personal private gain by law judges

may erode the public's confidence.

**A.** A law judge should endeavor to pursue a course of conduct which will not

raise suspicion among the public that he or she is likely to be engaged in

acts that are in violation of his or her trust.

**B.** A law judge should not by his or her conduct give reasonable basis for the

impression that any person can improperly influence the law judge or

unduly enjoy his or her favor in the performance of the law judge's official

duties, or that he or she is affected by the kinship, rank, position or

influence of any party or person.

Authority Cited:
Ethics Commission Advisory Opinion No. 95-21
POL § 74 (3)(f), (3)(h).

## Defendant # 5 - Thomas Glynn, Esq.

33.    Thomas Glynn, Esq., is an attorney at the Law Offices of Destin C.

Santacrose. Thomas Glynn, Esq., (Attorney for Liberty Mutual Insurance, Carrier,

representing U.S. Xpress Enterprise, Inc.,) during the Hearings Held in the matter

of a Claim for Workers' Compensation Benefits. Claim No. G105-8871.

## Plaintiff – Jerry W. Moore

34.    Jerry W. Moore is a 63-years old African Descendant of Slaves and a

Federal Citizen born in the Federal District of Columbia and a resident of the State

of New York, the County of Erie, and the City of Buffalo. Plaintiff is a recipient of

the legal assistance of "The Innocent Project" and one of the "original" (18)

Members of "The Centurion" ("Seeking freedom for the innocent and imprisoned

*via* DNA testing").

## "PLAINTIFF IS AN ORIGINAL MEMBER OF
## THE INNOCENT PROJECT and DNA Testing":

35.    Plaintiff **JERRY W. MOORE** is a recipient of the legal assistance of the

"INNOCENT PROJECT" and "The CENTURION" whose motto is: ("Seeking

freedom and justice for the innocent and wrongfully convicted and unjustly

imprisoned *via* DNA testing").

36.     Plaintiff is an "Innocent Man" who was once wrongfully imprisoned for 11-years, plus four months and 20-days in the Virginia Department of Corrections. He "discharged" the sentence on 12, February 1994 and was released from prison.

### Cause of Action - I.

*"Denial of Access to Courts has a Disparate Impact"*
*and*
*"Denial of Access to Justice has a Disparate Impact".*

37.     Access to the courts be "adequate, effective, and meaningful" in order to pass constitutional muster. The right must afford more than the mere ability to file a claim. It must provide an opportunity for the litigant to present his claims "Fairly."

38.     Defendants State of New York said: Under N.Y. Constitution CPLR 5601- ("no appeal as of right lies from a unanimous decision of the Appellate Division").

39.     Plaintiff states that: "Under N.Y. CPLR 5701(a)(1) – Appeals as of Right from an Interlocutory Order of the Appellate Division".

40.     Therefore, the NY Court of Appeals totally "Dismissing" the claim is tantamount to a "suppression" of access to "justice" and a denial of a fair proceeding because the plaintiff is a minority and not respected in the application of laws and equitable distribution of wealth because "clearly" there is a conflict in the interpretation of CPLR 5601 and CPLR 5701(a)(1) having a **disparate impact**.

41.    The U.S. Constitution is the law of the land. It is the most powerful legal document and carries with it significant weight, power, and influence. Therefore, African Descendants of Slaves (ADOS) continue to be oppressed under the current U.S. Constitution because the current constitution has not been <u>amended</u> to remove certain offensive and discriminatory and prejudicial language that have a **<u>disparate impact</u>**, as follows:

"**<u>The Critical Race Theory</u>**".

"Slavery has never legally ended in the U.S.A. but moved into the Prison System under the 13th Amendment in 1865" and denies the plaintiff (an ADOS) "equal justice" under the law and a disparate impact".

42.    The United States of America Constitution's discriminatory and prejudicial language has a **disparate impact** on the Plaintiff- a member of ADOS- and other African Descendants of Slaves and amounts to "***cruel and unusual***" punishment.

"The U.S. Constitution's Disparities"

Art. I, Section 3 U.S. Constitution:
"…adding the whole Number of free Persons, including those bound to Service for a Term of Years, and excluding Indians not taxed, three-fifths of all other Persons…"
Art. I, Section 9.
"…Importation of such Persons as any of the States now existing shall think proper to admit, shall not be prohibited by the Congress prior to the Year one thousand eight hundred and eight, but a Tax or duty may be imposed on such Importation, not exceeding ten dollars for each Person."

Art. IV, Section 3.
"No Person held to Service or Labour in one State, under the Laws thereof, escaping into another, shall, in Consequence of any Law or Regulation therein, be

12

discharged from such Service or Labour, but shall be delivered up on Claim of the Party to whom such Service or Labour may be due".


**13th Amendment to the U.S. Const, Section 1**.

"Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction".

Plessy v. Ferguson, 163 U.S. 537 (1896) was a landmark decision of the United States Supreme Court in which the Court ruled that racial segregation laws did not violate the U.S. Constitution as long as the facilities for each race were equal in quality, a doctrine that came to be known as "separate but equal".

Dred Scott v. Sandford, 60 US 393 (1857).
Issue: In this pre-Civil War case, the question was whether Congress had the constitutional power to prohibit slavery in free territories. A second question was whether the Constitution gave African Americans the right to sue in federal court.


Result: The 1857 Court answered no on both accounts: Congress could not prohibit slavery in territories, and African Americans also had no right to sue in federal court. In reaching these answers, the Court, interpreting the Constitution as it existed before the Civil War Amendments (Constitutional Amendments 13, 14, and 15) abolished slavery and concluded that people of African descent had none of the rights of citizens. The Court further reasoned that slaves were "property" and therefore could not be taken from their owners without due process.

Jim Crow Laws:
Southern laws were enacted in the late 19th and early 20th centuries by white Southern Democrat–dominated state legislatures to disenfranchise and remove political and economic gains made by African Americans during the Reconstruction period.
In practice, Jim Crow laws mandated racial segregation in all public facilities in the states of the former Confederate States of America and in some others, beginning in the 1870s.
Ku Klux Klan (KKK):
Klan, joined by other white Southerners, engaged in a violent campaign of deadly voter intimidation during the 1868 presidential election and additional violent intimidation campaigns.

The first leader, or "grand wizard" of the Ku Klux Klan, was Nathan Bedford Forrest, a well-known Confederate general.

43.    Racism and Discrimination "Trumps" law and justice every time. Plaintiff's

denial of workers' compensation benefits award by the New York Court of

Appeals and the Workers' Compensation Board is an inevitable result of  the

**racially bias and discriminatory constitutional and statutorily"** laws being

applied to ADOS to deny the plaintiff monetary and medical benefits, even though

the Hearings Judge made an Interlocutory Order (finding sufficient PFME

evidencing plaintiff's spinal cord injuries) to be awarded benefits he is otherwise

eligible to receive; however, the Hearings Judge refused to subpoena the Dr.

Grisante who wrote the medical report for fear of what it would reveal ("plaintiff's

traumatic spinal cord injuries are all work-related") and award benefits.

44.    Access to the courts be "adequate, effective, and meaningful" in order to

pass constitutional muster. The right must afford more than the mere ability to file

a claim. It must provide an opportunity for the litigant to present his claims

"Fairly." Plaintiff claims that the State of New York and its employees and agents,

alike, abridged his rights to access to court, in violation of the 1st Amendment to

the United States Constitution, "Petition the government for redress of grievances".

45.    Had the New York Court of Appeals ruled upon the merits of the

Interlocutory Order of the Law Judge and the prima facie medicine evidence then,

the plaintiff would prevail and have been awarded workers' compensation benefits

thus, by the State's failure to rule on the merits of the prima facie medical evidence

being appealed is, therefore, in violation of the plaintiff's constitutional rights to

access to courts to have his grievances heard and ruled upon based on the merits of

the issue being appealed. Article I, Section (9) and 1st Amendment to the U.S.

Constitution. (Petition the government for a redress of his grievances). *See*, CPLR

5701(a)(1)- **Appeals as of Right**.

46.    Plaintiff contends that the New York State Attorney General failed and/or

refused to file a reply brief in the claims on appeal to N.Y. Court of Appeals, and

State Courts' failure and/or refusal to rule on the merits of the plaintiff's main

issue on appeal as of right – an interlocutory order – (indicating a finding of

sufficient prima facie medical evidence) then, the plaintiff was denied his general

right to seek judicial redress in the courts for his grievances.

47.    Here, the plaintiff contends that the Workers' Compensation Board's action

to "disregard" *prima facie medical evidence* impedes or thwarts his claim. By the

State preventing disclosure of prima facie medical evidence critical to his claim,

denying or interfering with the plaintiff's right of access to the courts by

preventing or undermining litigation of the claim amounts to a "suppression of

prima facie medical evidence affecting the outcome of the proceedings" because

the prejudice resulted in denial of workers' compensation award of benefits.

**"Merits" and "Substantial Right"**

48.    New York State law provides for appeals to the Appellate Division and

Court of Appeals from decisions of administrative agencies. See, N.Y. C.P.L.R.

5601, 5602, **5701(a)(1)**.

49.    The Appellate Court and Full Board decisions and the New York Court of

Appeals Decision impermissibly allowed an affirmation (not verified by an oath

that the medical report is true under penalty of perjury) to "out-weigh" prima facie

medicine evidence, and such prejudiced appellant and carried great weight against

the appellant and affected the outcome of the proceedings, as a matter of law.

50.    In our Adversarial system of justice rarely is it justifiable for a presiding

workers' compensation hearings judge and opposing attorney at law and NY Law

Judge to suppress [expert medical testimony of Dr. Grisante's] ***prima face***

***medicine evidence*** referencing an injury. A presiding workers' compensation

judge and opposing attorney at law that withholds and/or suppresses expert

medical testimony affirming *prima face medicine evidence* referencing an injury

are "guilty" of suppressing *prima face medical evidence* referencing an injury and

<u>do not</u> comport with our standards of justice and denies a fair trial also, affected

the outcome of the proceedings and this claim, as a matter of law.

**Whereas, in that claim, the WCB Hearings Judge's Interlocutory**
**Order ("found sufficient prima facie medicine evidence to proceed").**

51.     However, after the Hearings Judge "found sufficient prima facie medicine

evidence", **(a)**: the Hearings Judge and the Respondent-Carrier did disregard it and

"suppressed" the medical expert testimony of Dr. Emily Grisante -the doctor who

wrote the prima facie medicine report in question; **(b)**: the respondent-carrier

controverted the claim and; **(c)**: then, the Hearings Judge denied the claim

indicating "claimant failed to establish a correlation of his spinal cord injury and

his employment". (d): plaintiff appealed the prima facie medical evidence to the

WCB and Appellate Court and New York Court of Appeals—the claim was denied

each time; therefore, the State-action amounts to a denial of access to court to have

his issue heard and a ruling on the merits of the main issue(s) being appealed,

appeal as of right.

52.     The strict requirements and the discriminatory interpretations, application,

and enforcement of the laws, codes, and 12 NYCRR, Workers' Comp. Law, _et al_.,

exclude approximately 60 percent of all Workers' Compensation Claims for

Benefits Filed by Handicap-American Descendants of Slaves (African American)

but only {1} percent of Caucasian men, similarly situated. Thereby, in violation of

Title VII of the Civil Rights Act of 1964 and Americans with a Disability Act

(ADA), in violation of the Equal Protection of the Law of the New York

Constitution, Article I, Section [11].

## CAUSE OF ACTION - II.

14th Amendment to the U.S. Constitution

"**Violation of Due Process of Laws**"

53.    The **State of New York's** discriminatory interpretations, application, and

enforcement of the laws, codes, and 12 NYCRR Workers' Compensation Law and

**CPLR 5701(a)(1)- Appeals as of Right**, is no more than a "static" formality of

"accommodations" to "accessibility" to courts while simultaneously excluded the

plaintiff from "accessibility" to justice to have the Hearing Judge's Interlocutory

Order heard and ruled on its merits.

54.    The Defendants State of New York, et al., did violate the plaintiff's 14th

Amendment Rights to Due Process of Laws. "The United States Constitution

mandates that the states afford the same rights, privileges, and protections to all

within its jurisdiction United States Constitution, 14th Amendment".

55.    The Defendant State of New York denied the plaintiff workers'

compensation benefits award for repetitive stress of heavy lifting, even though the

plaintiff has a medical report from a doctor referencing a workplace injury and an

Interlocutory Order from the Law Judge (indicating the plaintiff has prima facie

medical evidence).

56.    *As a Matter of Law*, under New York's Workers' Compensation Laws, the

plaintiff has a right to obtain benefits for injuries sustained due to "*Repetitive*

*Motion*" or "*Repetitive Stress*" Syndrome of the heavy lifting on the job. It does not

matter if you have one injury or multiple injuries, they are "inextricably

intertwined". The overexertion injuries from excessive lifting, pulling, bending,

carrying, throwing, pushing, or straining sustained by the plaintiff, while on the

job, is compensable under New York Workers' Compensation Laws. Multiple

dates of injury cannot be apportioned. See, Workers Compensation Law § 28.

57.    **No "*Factual Basis*" for Controverting the Claim**:

The State presented no factual basis for controverting this claim to justify the

denial of an award of lawful workers' compensation benefits. §12 NYCRR section

25 (2) (a) or (b) or section 300.22 (d) (3).

a):  The Carrier's Notice of Controversy fails to comply with Workers'

Compensation Law §12 NYCRR section §25(2) (a) or (b) or section 300.22 (d) (3)

of this part. In that, the notice of controversy is incomplete and fails to provide a

"**factual basis**" for the Insurance Carrier's controverting the claim.

b):  Pursuant to Title §12 NYCRR 300.37(2) (ii) (c), Dr. Emily Grisante's

"*Medical Narrative*" referencing a work-related back injury has yet to be refuted or

controverted by the Carrier-Respondent. The plaintiff relies on the prima facie

medical evidence and the narrative opined by Dr. Emily Grisante that tends to support a causal connection of his spinal cord injuries and his work.

c): The Respondent (Carrier) has never provided a "factual basis" for controverting the claim, yet the appellant was denied workers' compensation benefits even though the appellant has established a finding of prima facie medicine evidence to support his claim according to the Hearing Judge's interlocutory order; therefore, the State violated the plaintiff's U.S. Constitutional Rights to **Due Process** of law.

58.     By (WCBLJ) and Respondent-Carrier's failure and/or refusal to make available the Testimony of Dr. Grisante's Medical Narrative (*indicating claimant's back injury is work-related*) thereby "Suppressed" and "Withheld" Prima Facie Medical Evidence referencing an injury then, the suppression of a medical report referencing a work-related back injury tending to support a claim for benefits amounts to State-action thus, carried-over and had great-weight in affecting the outcome of the proceedings thus prejudiced this appellant, in violation of Art. I, Section [2], [3], [4], and Section [6] and [11] of the New York Constitution, *et al*.

59.     The WCB Decision(s) and New York Court of Appeals' Dismissal of the Plaintiff's claims are *contrary to the trier of facts* and *contrary to the evidence* and *contrary to the trier of laws,* in violation of the plaintiff's constitutional rights to the equal protection clause and due process of law.

## CAUSE OF ACTION -III

N.Y. COURT OF APPEALS
Failed to Rule on the Merits of the
Interlocutory Order on Appeal as of Right.

**New York Constitution Violations**:

60.    NY CPLR 5601: Constitutional grounds.  An appeal may be taken to the

court of appeals as of right on Interlocutory Orders from the Appellate Division:

   I. from an order of the appellate division which finally determines an action

where there is directly involved the construction of the constitution of the state or

of the United States; and

   II.  from a judgment of a court of record of original instance which finally

determines an action where the only question involved in the appeal is the validity

of a statutory provision of the state or of the United States under the constitution of

the state or of the United States.

61.    To appeal an interlocutory order by right, the party's motion, that

culminated in an order must have been made upon notice to the other party. See

N.Y. Civ. Prac. L. & R. 5701(a)(2).

The plaintiff appealed the decision of the Workers' Compensation Law Judge

denying his claim.

**N.Y. CPLR 5701(a)(1) and (a)(2)**

Interlocutory Order on Appeal
To the New York Court of Appeals

62.    Appellant relies on the proposition that, if the statute (§12 NYCRR 300.1)

and (§12 NYCRR 300.37) at: (2) (ii) (c) and §12 NYCRR 309.1(i) cannot operate

as it purports to operate then, it does not operate at all. Mr. Moore (appellant) does

not think that it can be presumed to mean to give to all persons a right to present

*prima facie medicine evidence* referencing an injury in support of a claim in cases

of a controverted claim and disregard it at the same time to make the more limited

grant that it attempts. *See*, CPLR 5701(a)(1)- **Appeals as of Right**.

63.    Here, the WCB and the Appellate Court, and the New York Court of

Appeals all failed, and/or refused or neglected to rule on the merits of the

Interlocutory Order and the *Prima Facie Medicine Evidence* of Dr. Emily Grisante

is a denial of access to court to have his main issue on the appeal heard and

decision and ruling on the merits of the prima facie medical evidence, as a matter

of law.

## CAUSE OF ACTION - IV.

Title II and Title III of the Civil Rights Act of 1964
("Public Accommodations")

64.    The practice by the <u>State</u> government creates a burden on a fundamental

right or disadvantage for this plaintiff - a minority member of an insular and

protected group.

65.    The role of slavery and "*Three Fifths*" of a Person and lawfully enslaved

persons, Jim Crow Laws and, it's like, and its pervasive effects of racism on the

criminal-Criminal Justice System and American Descendants of Slaves (ADOS)

and applications of laws is, *partly*, being addressed herewith in this complaint.

## Disparate Impact:

66.    Defendant <u>Letitia James</u>, Attorney General of New York and New York

Supreme Court, Appellate Division, and New York Court of Appeals actions

described above constitute disparate impact and discrimination, in violation of

Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R.

Part 35 because b) exclude individuals with disabilities from participation in and

deny them the benefits of the services, programs, or activities of a public entity on

the basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and

its implementing regulation, 28 C.F.R. § 35.130(a):

c) excludes members of a protected group and qualified individuals with

disabilities an opportunity to have their appeal heard and a ruling on the merits of

23

the appeal and to participate in legal and economic benefits, awards, and services

of a court of law that are not equal to those afforded to members of the Caucasian

or ("white") race, in violation of Title II of the ADA, 42 U.S.C. § 12132 and 28

C.F.R. §35.130(b)(1)(ii):

d) otherwise limit members of a protected group and qualified individuals with a

disability in the enjoyment of any right, privilege, advantage, or opportunity

enjoyed by others (Caucasians) receiving the aid, benefit, legal decision, awards or

services, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its

implementing regulation, 28 C.F.R. §35.130(b)(1)(vii):

e) fail to make reasonable modifications in policies, practices, or procedures

necessary to avoid discrimination on the basis of disability, in violation of Title II

of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. §

35.130(b)(7):

f) utilize methods of administration that have the effect of subjecting qualified

individuals with disabilities to discrimination on the basis of disability, in violation

of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28

C.F.R. § 35.130(b)(3):

g) exclude or otherwise deny equal services, programs, or activities to an

individual or entity because of the known disability of an individual with whom the

individual or entity is known to have a relationship or association, in violation of

Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(g) and,

h) interfere with an individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the ADA, in violation of Title V of the ADA, 42 U.S.C. § 12203(b).

i) had the State refused to violate their own state's laws by "*ruling on the merits of the issue being appealed*" and "not *suppressing* the Prima Facie Medical Evidence Referencing an Injury" then, there would have been less controversy because the refusal would have been tantamount to supporting claimant's claim of a work-related back injury. The State's arbitrary and discriminatory actions have caused even greater harm and a disparate impact on the plaintiff.

j) Whereas, here, in this complaint, the plaintiff contends that he was being treated as a "*second-class*" citizen by the State's interpretations and applications and enforcements of the Laws of New York State.

State Created Impediments have a Disparate Impact:

67.    The New York Attorney General fail to protect Mr. Moore's Rights as a Citizen of this State against State-created impediments that thwarted or prevented PFME Referencing an Injury from presentment to court and by claimant's Right to

25

access to courts being denied thus, amounts to a "denial of the Equal Protection of

the Laws" of the State of New York Constitution Article 1, Section (6) and

Section (11), and the Fifth and Fourteenth Amendment to the U.S. Constitution.

68.    Through State-created impediments, this plaintiff has been deprived of his

right to receive a fair opportunity to be heard in court, in violation of the "Due

Process Clause" of the Fifth and Fourteenth Amendments to the U.S. Constitution

and the "Immunity Clause" of Article IV, and the First Amendment "Petition

Clause".

69.    This plaintiff contends that "by the State-actors "holding him to a higher

standard of proof' **prima facie medical evidence** to establish that his spinal cord

injuries are work-related" then, he was denied any "meaningful" access to the New

York Courts and "meaningful" access to justice to have a ruling on the merits of

the interlocutory order being appealed, and the prima facie medicine evidence

submitted and made a part of the record, in violation of 12 NYCRR

300.37(2)(ii)(c) and Article I, Section (9) of the New York Constitution.

70.    Plaintiff further contends that "by the State-actors "holding him to a higher

standard of proof' to establish that his employment and the "repetitive stress of

heavy lifting syndrome" contributed to his spinal cord injuries". Plaintiff avers that

"repetitive stress of heavy lifting syndrome" is compensatory under New York

State Workers' Compensation laws.

26

71.    "The United States Constitution mandates that the states afford the same

rights, privileges, and protections to all within its jurisdiction (US Constitution

14th Amend, § 1). Likewise, the New York State Constitution provides a similar

protection (NY Constitution Art. 1 § 11).

**Disparate Impact:**

72.    Plaintiff's federal complaint, *in part*, is Title 42 U.S.C. § 1982, which

provides that "all citizens of the United States shall have the same right, in every

State and Territory, as is enjoyed by white citizens thereof to inherit, purchase,

lease, sell, hold, and convey real and personal property."

73.    However, the plaintiff contends "the <u>State</u> denied the plaintiff an award of

benefits simply because he is a member of a protected group", an African

descendant of slaves (ADOS) and devoid of any legal rights that are to be

respected to be awarded monetary funds in the amount at issue in his claim for

benefits.

74.    Attorney General failed and/or refused to enforce the laws and §12 NYCRR

300.1 and §12 NYCRR 300.37, *et al.*, as it related to the plaintiff's claim.

75.    The <u>State</u> interpretations and enforcement of <u>§12 NYCRR</u> and how it relates

to <u>Article I, Section [3] of the U.S. Constitution</u> have a disproportionately

**disparate impact** on the plaintiff and members of legally protected groups such as

ADOS - A group claimant is a *bona fide* member of (ADOS) – because the <u>State</u>

27

*restricts, thwarts* and *denies* New York Workers' Compensation Claim for

Benefits involving American Descendants of Slaves (African-Americans), *but that,*

grant workers' compensation claims involving Members of the Caucasian Race,

*similarly situated,* more frequent than ADOS, in violation of <u>Title VII of the Civil</u>

<u>Rights Act of 1964</u> and; ADA-Title §42 of the United States Code, Chapter 126,

Section 12112. Discrimination.

### CAUSE OF ACTION - V.

Title II and Title III of the
Americans with Disabilities
Act of 1990 and Act of 1991.

**<u>Disparate Treatment:</u>**

76.    **a]** Here, Defendant <u>Thomas Glynn, Esq.</u>, (the Carrier) did <u>willfully</u> and

<u>intentionally</u> discriminate against this plaintiff by suppressing Dr. Emily Grisante's

Medical Expert Testimony. Dr. Grisante wrote the **Prima Facie Medical**

**Evidence referencing a workplace injury** and

**b]** by filing an "Incomplete Notice of Controversy" with no "factual basis" for

controverting the claim he is otherwise eligible and qualified for benefits. See, § <u>12</u>

<u>NYCRR 300.37 (2) (ii) (c)</u>.

**c]** Plaintiff received less justice and less award of compensation for benefits than

Caucasians appearing before the New York State Workers' Compensation Board.

In fact, the adjudication process and the trier of fact, and the trier of law the

plaintiff received are not the same nor similar to that of Caucasian persons and

*disabled-Caucasian persons* appearing before the Board, in violation of Title VII

of the Civil Rights Act of 1964 and, Title §42, Chap. 126 USC, Section 12101 and,

12112 and, in violation of Article §IV of the U.S. Constitution "*Immunity Clause*",

**d]** By the WCB and Carrier's failure to produce the expert witness and/or

suppressing competent medical expert evidence and testimony violated plaintiff's

Sixth Amendment Rights to the U.S. Constitution "*compulsory process clause*".

**e]** The Board's actions and Carrier's inaction amount to interference with the

administration of justice.

**f]** Here, the plaintiff's constitutional right to appeal as of right, which, also

includes the right to have your main issue on appeal ruled on based upon the merits

of the issue being appealed was denied to Mr. Moore, in violation of the plaintiff's

Sixth Amendment Rights to the U.S. Constitution "*compulsory process clause*"

and the New York Constitution, Article I, Section (6) and Section (11) "Equal

Protection Clause.

"The Board Panel Decision is Full of **False** Narratives of the Facts"

77. *Firstly*. In the Board Panel Decision dated, 08/13/2020, the Board makes the

"ridiculous" contention(s) on page #2, in *paragraph (5)* "Board's Decision": [("On

May 31, 2016, the claimant treated with Dr. Douglas Moreland, for treatment of a

thoracic abscess following thoracic spine surgery on February 12, 2016. Dr.

Moreland opined that the surgery, and therefore the subsequent abscess, were causally related to the claimant's accident……")]. This is "**FALSE**". Dr. Moreland did testify [("…that he was covering for his partner")] hat Dr. Emily Grisante examined the claimant and Dr. Moreland simply *signed off* on the examination of the claimant because the claimant's surgeon Dr. John Fahrbach was absent on that day and he filled-in for him…")] He further testified that: ("…lifting and simultaneously turning the vertebrae <u>will</u> cause a traumatic spinal cord injury…").

***Secondly***. The Panel Board's Decision on <u>page # 6, *paragraph*</u> (6), the Board says: [("There is no evidence in the record that the claimant actually subpoenaed the first proposed witness, Mr. Wysocki…")]. The Board's Findings are "**FALSE**" and contributed to the denial of this claim based upon erroneous "***trier of facts***" and "***trier of the evidence***" because Dr. Wysocki was the first to examine the claimant on 11-2-2015 following the back injury thus, a material witness. ***Thirdly***. In the Panel Board's Decision on <u>page #9, *paragraph*</u> (1), The Board says: [("Furthermore, the most contemporaneous medical record indicates that the claimant injured himself while sleeping, with no indication that the claimant sustained an injury at work")], **in violation of the plaintiff's Sixth Amendment Rights to the U.S. Constitution "*compulsory process clause*" and the New York Constitution, Article I, Section (6) and (11).**

78.     Claimant avers that the Panel Board's Decision and "***Finder of Facts***" in this claim are "**ridiculous**" and purely "*speculative*" by the Board and *prejudice* the plaintiff because the said decision is in direct conflict with the prima facie medical evidence in the Record.

79.     **MOREOVER**, on colloquy with the Law Judge, the Carrier "**admitted**" ("Dr. Grisante-PA did sign the prima facie medical evidence dated, 5-31-16"). Therefore, the (WCBLJ) and the Carrier both knowingly and intentionally "suppressed" Dr. Grisante's testimony from the Record, *but that*, allowed Dr. Moreland's testimony even though (*both*) Dr. Grisante and Dr. Moreland did sign the PFME together. By the suppression of Grisante's testimony sealed the plaintiff's fate in denial of his claim, in violation of the plaintiff's statutory and constitutional rights to **due process** of law.

80.     Defendant Thomas Glynn, Esq., on colloquy, the Carrier-Respondent, "**Admitted**" [("Dr. Grisante-PA did sign the prima facie medical evidence dated, 5-31-16 referencing a spinal cord injury work-related")] See, Tr. Tr. at **(A-410)**. The claim was disallowed because the plaintiff failed to establish a causal link.

    n): Defendant Glynn knowingly and with intent to deny, did fail to secure the medical expert testimony of Dr. Grisante to ensure to DISALLOW the claim had a **disparate treatment**.

## CAUSE OF ACTION - VI.

### "Racial Disparities in the New York Courts"

81.     Plaintiff contends that he has experienced "firsthand" the racial disparities

when a minority member appears before a New York State Court of Appeals or the

New York State Supreme Court, as a defendant or as a plaintiff, the results are the

same - "the minority has got to lose" and the "Caucasian goes free or wins

monetary value; but not the Black persons. Such is the current issue raised in this

complaint for a redress of his grievances on the State of New York Defendants.

DISPARITIES IN INTERPRETING
**PRIMA FACIE MEDICAL EVIDENCE**
EVIDENCING AN INJURY.

- Hearing Judge's Interlocutory Order (Finding Sufficient Prima Facie Medical Evidence of Injury) PFME.
- Hearing Judge then "suppresses" the medical expert testimony of Dr. Emily Grisante who wrote the medical narrative of PFME.
- Hearing Judge then DISALLOWED the plaintiff's claim indicating that ("plaintiff had no evidence of causal relationship or PFME).

DISPARITIES IN MINORITY ACCESS
TO COURT AND JUSTICE ON APPEALS
PURSUANT TO CPLR 5601 and CPLR 5701(a)(21)(and (2).

- On Appeal of a final order of the Courts and the Appeals of the Interlocutory Order of the Hearings Judge Daniel Scott, the plaintiff filed an appeal, and Filed an Appeal on the issue(s) of the prima facie medical evidence and the Interlocutory Order as the "main" issue being appealed. - CPLR § 5601 and CPLR § 5701(a)(1) and (2)- **Appeals as of Right**.

- The New York Court of Appeals in its decision to <u>DISMISS</u> the claim in its entirety stated that, under CPLR 5601 ("no appeal as of right from the Appellate Division").
- CPLR 5601 and CPLR 5701(a)(1) and (2) are in conflict in this legal matter because not only did the plaintiff file an Appeal of the Interlocutory Order, but he also appealed the Final Order of the lower court of Appellate Division.

## PREJUDICES BY THE BOARD

- The New York State Workers' Compensation Board injected "conjecture" and "speculation" into their interpretation of the plaintiff's spinal cord injury during their deliberation and decision-making and prejudiced the plaintiff's chances of establishing a claim for an award of benefits. The Board said: "("Plaintiff hurt his spinal cord while sleeping in bed").
- Board further said: there is no evidence in the file of Dr. Gary Wysocki being Subpoenaed to give testimony which was FALSE.

- NY Court of Appeals refused to rule on the merits of the claim for fear the plaintiff (a Blackman) would prevail under current workers' compensation laws.

- What Piqued the Judges of the New York Court of Appeals' interests in totally DISMISSING the claim?
- The Attorney for the Carrier, Mr. Thomas Glynn, Esq., failed to file a "factual basis" for controverting the claim.

- The N.Y.S. Attorney General "REFUSED" to file a Reply Brief on Appeal to the Appellate Division of the NY Supreme Court in this matter.

82. Plaintiff incorporates into his complaint the language contained in the below

"Report to the U.N. on Racial Disparities in the U.S. Criminal Justice System" as if

he said it more fully himself, as follows:

# REPORT TO THE UNITED NATIONS ON RACIAL DISPARITIES IN THE U.S. CRIMINAL JUSTICE SYSTEM.
## April 19, 2018. By: The Sentencing Project.

83.     The United States criminal justice system is the largest in the world. At the year-end of 2015, over 6.7 million individuals were under some form of correctional control in the United States, including 2.2 million incarcerated in federal, state, or local prisons and jails. The U.S. is a world leader in its rate of incarceration, dwarfing the rate of nearly every other nation.

j):  Such broad statistics mask the racial disparity that pervades the U.S. criminal justice system, and for African Americans in particular. African Americans are more likely than white Americans to be arrested; once arrested, they are more likely to be convicted; and once convicted, they are more likely to experience lengthy prison sentences. African American adults are 5.9 times as likely to be incarcerated than whites and Hispanics are 3.1 times as likely. As of 2001, one of every three black boys born in that year could expect to go to prison in his lifetime, as could one of every six Latinos—compared to one of every seventeen white boys. Racial and ethnic disparities among women are less substantial than among men but remain prevalent.

k):  The source of such disparities is deeper and more systemic than explicit racial discrimination. The United States in effect operates two distinct criminal

34

justice systems: one for wealthy people and another for poor people and people of color. The wealthy can access a vigorous adversary system replete with constitutional protections for defendants. Yet the experiences of poor and minority defendants within the criminal justice system often differ substantially from that model due to several factors, each of which contributes to the overrepresentation of such individuals in the system. As former Georgetown Law Professor David Cole states in his book *No Equal Justice*,

l):  These double standards are not, of course, explicit; on the face of it, the criminal law is color-blind and class blind. But in a sense, this only makes the problem worse. The rhetoric of the criminal justice system sends the message that our society carefully protects everyone's constitutional rights, but in practice, the rules assure that law enforcement prerogatives will generally prevail over the rights of minorities and the poor. By affording criminal suspects substantial constitutional rights in theory, the Supreme Court validates the results of the criminal justice system as fair. That formal fairness obscures the systemic concerns that ought to be raised by the fact that the prison population is overwhelmingly poor and disproportionately black.

m):  By creating and perpetuating policies that allow such racial disparities to exist in its New York Criminal Justice System and elsewhere, the United States is in violation of its obligations under Article 2 and Article 26 of the International

Covenant on Civil and Political Rights to ensure that all its residents—regardless of race—are treated equally under the law.

84.    This claimant (Jerry W. Moore) is being denied New York Workers' Compensation Claim for Benefits by <u>State</u> officials simply because he is a **Black male** or African American or viewed as ***Three-Fifths*** of a Person, in violation of Title VII of the Civil Rights Act of 1964 and Title II of the Americans with a Disability Act. Of 1990 and ADA-Title §42 of the United States Code, Chapter 126, Section 12112. Discrimination" and the Equal Protection Clause of the New York Constitution.

## CAUSE OF ACTION - VII.

85.    <u>**Racial Disparity in Enforcement of § 12 NYCRR 300.37(2) (ii) (c)**</u>:

The **prima facie medical evidence** shows the workplace accident was a substantial factor in bringing about the injury, without which the injury would not have occurred; however, the State's Interlocutory Order and evidence are contrary to the court's decision and conflict with the elements necessary to be awarded benefits under New York Workers' Compensation laws.

86.    "*Either plaintiff was injured before being hired at USX on September 3, 2015, and USX Medical Doctors "Falsified" His Medical Report and issued him a Medical Certificate, or Mr. Moore was injured during the course and scope of his*

*employment during repetitive stress of lifting thousands of boxes for Dollar Tree Stores on a weekly basis*".

87.    By State's suppression of medical expert testimony of Dr. Emily Grisante who would have testified that she wrote the medical report referencing a workplace injury then, the plaintiff was denied compulsory process and due process of law which amounts to a denial of access to court to have his claim fairly and justly adjudicated, in violation of Title 12 of the NYCRR, Chapter V, Part (309).

88.    According to §12 NYCRR 300.37, in order to be provided a hearing and, also, to prevail on a controverted claim for New York State Workers' Compensation Benefits, the claimant is required to present a medical report referencing an injury at (2) (ii) (c).

89.    Plaintiff contends that he did produce a medical report referencing an injury pursuant to Title §12 NYCRR 300.37(2) (ii) (c).  Dr. Emily Grisante's "*Medical Narrative*" referencing a work-related back injury is not refuted or controverted by the Carrier -Liberty Mutual Insurance, Inc., yet the plaintiff is denied lawful workers' compensation benefits for which he qualifies to receive. However, the Law Judge "sabotaged" the plaintiff's claim by "suppressing" the medical expert testimony of Dr. Grisante who wrote the prima facie medical report referencing a workplace injury in order to assure that plaintiff will not prevail and obtain workers' compensation benefits, **in violation of plaintiff's constitutional rights**

to Due Process, Equal Protection and Access to Courts and Cruel and Unusual Punishment.

90.    Although the appellant sufficiently established his *prima facie* entitlement to judgment **as a matter of law**, on the issue of liability because of the Interlocutory Order entered by the Workers' Compensation Law Judge ("finding sufficient prima facie medical evidence referencing an injury"*)*, the Law Judge entered his final <u>decision and order</u> and denied plaintiff's claim finding that "plaintiff failed to demonstrate a medical correlation of his spine injury and his work". Since the appellant has satisfied the requirements to meet his prima facie burden, his appeal on the issue of liability should have been granted regardless of the sufficiency of the respondents' opposing papers.

<u>**CAUSE OF ACTION - VIII.**</u>

<u>**State Government Corruption:**</u>

91.    State of New York Defendants, in strict requirements to enforce "racial discrimination" policies, the <u>State</u> opted for "racial discrimination" and "abridge the rights of others" over "fair" and "just" application of the laws for all citizens have a **disparate impact**.

92.    Plaintiff contends that the <u>State's</u> practices encourage, entrenches, subsidize, or result in racial [color or national origin] discrimination because racism runs

rampant throughout the New York Court System and recent history is fit testimony.

93.    For instance. The recent "Mass Murders of Ten African Americans at a TOPS Grocery Store" on May 14, 2022, by an 18-year-old so-called "White Supremacist".

94.    The local law enforcement arrested the Caucasian 18-year-old mass murderer on the scene without incident.

95.    Law enforcement did not even have the Caucasian 18-year-old get down on the ground ("assume the position").

96.    Law enforcement did not in any way make the suspect feel any discomfort during the process of arrest and jail.

97.    The Erie County District Attorney, Buffalo, New York is not going to treat this murderer harshly and is not going to seek the maximum sentence that could possibly be imposed.

98.    The trial judge is going to go along with the program because the murderer is a Caucasian 18-year-old and is not to be mistreated in any form or fashion because the "criminal justice system" is not designed for Caucasians, but that, the "system" was designed for the African Descendants of Slaves following the passage of the **Thirteenth (13ᵗʰ) Amendment** to the United States Constitution. ("No slavery nor involuntary servitude, except as a punishment for crime whereof

39

the party shall have been duly convicted, shall exist within the United States, or

any place subject to their jurisdiction").

<u>"The State of New York's</u> <u>Strict Requirements</u>
<u>To Enforcement of Racial Discrimination Policies</u>
<u>in Access to Courts violates the Equal Protection Clause"</u>

99.    Plaintiff contends that African Americans in New York State are more likely

than white Americans to be arrested; once arrested, they are more likely to be

convicted; once convicted, they are more likely to experience a lengthy prison

sentence.  African American adults are 5.9 times as likely to be incarcerated than

whites and Hispanics are 3.1 times as likely. As of 2001, one of every three black

boys born in that year could expect to go to prison in his lifetime, as could one of

every six Latinos—compared to one of every seventeen white boys.  in violation of

Title VI, 42 U.S.C. § 2000d et seq., which was enacted as part of the landmark

Civil Rights Act of 1964. It prohibits discrimination on the basis of race, color, and

national origin in programs and activities receiving federal financial assistance.

100.    *As, a matter of law*, the <u>State</u> (WCLJ), *abused his power and discretion* and

presented a "***conflict of interest***" by failure and/or refusal to recuse himself from

this Claim because he provided "continual" legal advice to the plaintiff's attorney

(a newly admitted member of the bar) in a criminal case on appeal to the New Yor

Court of Appeals in 2004-2005, but that, the New York Courts "**covered up**" the

state-actors wrong doing by the dismissal of the claim, in violation of plaintiff's

constitutional right to a fair and impartial hearing to have his claim adjudicated.

101.   On the first day of the hearings, the plaintiff introduced himself to Judge

Scott. Scott knew exactly who the plaintiff was and knew that he and the plaintiff

have the same friend in common, yet Law Judge Scott hid this fact.

102.   Defendant (WCLJ) Daniel Scott should have "*Recused Himself*", as an

appearance of Impropriety for his involvement and continuous legal advice given

to the plaintiff's attorney Mary Walek in the Matter of People v. Jerry W. Moore, 5

NY3d, 725 (2005). Based upon the New York Rules of Professional Conduct § 22

NYCRR 1200.00 and (see Jud Law § 499-a) therefore (WCBLJ) Scott *prejudiced*

the plaintiff's claim and had a **disparate impact**, as follows:

- The State of New York Courts "buried" these issues and denied and

  dismissed the claim at every level in order to deny the plaintiff – a

  Blackman- the benefits of any redress of his grievances because he is

  a descendant of slaves in this country and therefore devoid of all legal

  rights of which the Whiteman must respect, in violation of the "*Equal*

  *Protection Clause*" of the U.S. Constitution.

103.   **Plaintiff demands a Jury Trial on all issues triable**.

Prayer for Relief

**WHEREFORE,** the Plaintiff Jerry W. Moore prays that the Court enter an order

that:

**1**. Declares that the policies and practices of Defendants, as alleged in this

complaint, violate Title 42 USC §1982 and 28 C.F.R. § 35.130(g) and the

Americans with Disabilities Act of 1990 and 1991. Discrimination. Civil Rights

Act of 1964.

**2**. Enjoins Defendants, their officers, employees, agents, successors, and all

other persons in active concert or participation with any of them, from:

a. Failing or refusing to rule on the merits of the interlocutory order being appealed

and for failing and/or refusing to rule on the merits of the prima facie medicine

evidence submitted and made a part of the record to bring them into compliance

with Title 42 U.S.C. § 1982, and Title 12 of the NYCRR, Chapter V, Part (309)

and Title II and Title III of the Americans with a Disability Act of 1990 and 1991

and, 28 C.F.R. § 35.130(g).

**3**. Awards appropriate monetary damages, pursuant to 42 U.S.C. §

3614(c)(I) and § 3614(d)(1)(B), to each person harmed by Defendant's

discriminatory conduct and practices; and

**4**. Assesses a civil penalty against each of the Defendants in the maximum

amount authorized by 42 U.S.C. § 3614(d)(1)(C), to vindicate the public interest.

5.   **Awards appropriate monetary damages, pursuant to 42 U.S.C. §**
**3614(c)(I) and § 3614(d)(1)(B), to each person harmed by Defendant's**
**discriminatory conduct and practices and disparate impact; and**

6.   Assesses a civil penalty against each of the Defendants in the maximum
amount authorized by 42 U.S.C. § 3614(d)(1)(C), to vindicate the public interest.

7. Plaintiff further prays for such additional relief as the interests of justice
may require.

**"I declare under penalty of perjury that the foregoing is true and correct".**

Executed on: June 2, 2022.              By:    *Jerry W. Moore*

Jerry W. Moore (*plaintiff*)
865 Michigan Avenue
Apt. 313
Buffalo, New York 14203
(716) 322-0019 (h)
E-mail: moorejerry308@gmail.com

43

Case: **1:22−cv−00418**
Assigned To : **Vilardo, Lawrence J.**
Assign. Date : **6/2/2022**
Description: **Moore v. DiFiore et al**

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JERRY W. MOORE,

### DEFENDANTS

MERRICK B. GARLAND

**(b)** County of Residence of First Listed Plaintiff  Erie
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro se: 865 Michigan Avenue, Apt. 313
Buffalo, NY. 14203

Attorneys *(If Known)*

U.S. Attorney General's Office
Wash. D.C.

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☒ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1982; Title 42 USC 2000b; Title III of the 1964 Civil Rights Act
Brief description of cause:
Denial of Access to Courts and Denial of Access to Justice Discrimination

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

## FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE  LJV  MAG. JUDGE _____